**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Bitsuie, | No. CV-22-08146-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

At issue is Plaintiff Edward Bitsuie's Motion for Summary Judgment (Doc. 12, Pl. MSJ), to which Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR") filed a Response and Cross-Motion for Summary Judgment (Doc. 14, ONHIR MSJ), Plaintiff filed a Reply (Doc. 16, Pl. Reply), and ONHIR filed a Reply (Doc. 17, ONHIR Reply). The Court will resolve the cross-motions for summary judgment without oral argument. LRCiv 7.2(f).

## I.     BACKGROUND

Plaintiff Edward Bitsuie was born in 1952 and is an enrolled member of the Navajo Nation. (Doc. 1, Compl. ¶¶ 11, 13.) In his childhood, he spent his early years living with his mother on land that would later be partitioned to the Navajo Tribe, and, once he started elementary school, he lived most of the time with his father's mother about 20 to 25 miles away, on land located on Howell Mesa that would later be partitioned to the Hopi Tribe. (Compl. ¶¶ 13, 14.) He attended the first two years of high school in Tuba City, Arizona, commuting from his grandmother's house. (Compl. ¶ 15.) He spent the last two years of

1    high school at Coconino High School in Flagstaff, commuting back to his grandmother's

2    house on weekends and for the summers. (Compl. ¶ 15.) He graduated from high school in

3    1972 and continued to live with his grandmother, commuting to Tuba City to work as a

4    dishwasher. (Compl. ¶ 16.) In 1973, Plaintiff's father moved into the house to care for

5    Plaintiff's grandmother and the livestock they kept. (Compl. ¶ 17.)

6         Plaintiff entered the Army in December 1973 and was medically discharged in May

7    1974. (Compl. ¶ 18.) While he was in the Army, his grandmother died. (Compl. ¶ 18.) After

8    discharge, he alleges he returned to his grandmother's house on Howell Mesa to help his

9    father care for the livestock. (Compl. ¶ 18.) He alleges he maintained the home as his

10   primary residence and worked there as a rancher, leaving only for short-term jobs at the

11   Hard Rock Chapter of the Navajo Nation and for Southwest Forest Industries in Flagstaff.

12   (Compl. ¶ 19.)

13        On July 21, 2010, Plaintiff applied for relocation benefits under the Navajo-Hopi

14   Land Settlement Act, Pub. L. No. 93-531 § 12, 88 Stat. 1718, ("Settlement Act"). (Doc. 10,

15   ONHIR Admin. R. ("R.") Ex. 7.) Defendant ONHIR denied his application on January 11,

16   2013, stating that, while Plaintiff's father was certified for relocation benefits based on his

17   residence at the Howell Mesa homesite, Plaintiff failed to show by a preponderance of the

18   evidence that he "maintained substantial and recurring contacts" at the Howell Mesa

19   homesite prior to his entry into the Army in December 1973 or following his discharge in

20   May 1974. (R. Ex. 10.)

21        On appeal, an Independent Hearing Officer ("IHO") held a hearing on June 3, 2016

22   (R. Ex. 19), at which Plaintiff and his two brothers testified, and the IHO issued a decision

23   upholding ONHIR's denial of relocation benefits (R. Ex. 23). ONHIR issued its Final

24   Agency Action on August 16, 2016. (R. Ex. 24.)

25        Plaintiff filed this action on August 15, 2022, requesting the Court's review of

26   ONHIR's decision under the Administrative Procedure Act, 5 U.S.C. §§ 701-706. (Compl.

27   ¶ 30.) The parties have now cross-moved for summary judgment.

28

1    ## II.    LEGAL STANDARDS

2    ### A.    Summary Judgment

3    Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate

4    when the movant shows that there is no genuine dispute as to any material fact and the

5    movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

6    *Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the

7    outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could

8    resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA,*

9    *LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

10   242, 248 (1986)). The court must view the evidence in the light most favorable to the

11   nonmoving party and draw all reasonable inferences in the nonmoving party's favor.

12   *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

13   The moving party "bears the initial responsibility of informing the district court of

14   the basis for its motion, and identifying those portions of [the record] . . . which it believes

15   demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232.

16   When the moving party does not bear the ultimate burden of proof, it "must either produce

17   evidence negating an essential element of the nonmoving party's claim or defense or show

18   that the nonmoving party does not have enough evidence of an essential element to carry

19   its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*,

20   210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of

21   production, the nonmoving party must produce evidence to support its claim or defense.

22   *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing

23   sufficient to establish the existence of an element essential to that party's case, and on

24   which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

25   In considering a motion for summary judgment, the court must regard as true the

26   non-moving party's evidence, as long as it is supported by affidavits or other evidentiary

27   material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest

28   on its pleadings; it must produce some significant probative evidence tending to contradict

1    the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57

2    (holding that the plaintiff must present affirmative evidence in order to defeat a properly

3    supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045

4    (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on

5    conclusory allegations unsupported by factual data." (citation omitted)).

6        **B.    Judicial Review of an Agency Decision**

7        Under the Administrative Procedure Act ("APA"), a district court may review

8    federal agency action. 5 U.S.C. § 706. Although judicial review under the APA must be

9    searching and careful, a court's role remains narrow. *Mt. Graham Red Squirrel v. Espy*,

10   986 F.2d 1568, 1571 (9th Cir. 1993). Under this narrow and deferential standard, the court

11   cannot substitute its judgment for the agency's, especially where the "challenged decision

12   implicates substantial agency expertise." *Ninilchik Traditional Council v. U.S.*, 227 F.3d

13   1186, 1194 (9th Cir. 2000). When reviewing agency action under the APA, the court may

14   reverse or set aside the action if the court finds that that agency action was "arbitrary,

15   capricious, an abuse of discretion, not in accordance with law, or unsupported by

16   substantial evidence." 5 U.S.C. § 706(2)(a), (e); *Bedoni v. Navajo-Hopi Indian Relocation*

17   *Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989).

18       A court will find an agency's decision arbitrary and capricious "only if the agency

19   relied on factors Congress did not intend it to consider, entirely failed to consider an

20   important aspect of the problem, or offered an explanation that runs counter to the evidence

21   before the agency or is so implausible that it could not be ascribed to a difference in view

22   or the product of agency expertise." *Gardner v. U.S. Bureau of Land Mgmt.*, 638 F.3d 1217,

23   1224 (9th Cir. 2011). ONHIR's action will be upheld "if the agency considered the relevant

24   factors and articulated a rational connection between the facts found and the choices

25   made." *Id*.

26       Alternatively, a court may overturn an agency decision under the abuse of discretion

27   standard if the IHO failed to justify his or her decision. "[A]n agency must cogently explain

28   why it has exercised its discretion in a given manner[.]" *Motor Vehicle Mfrs. Ass'n of U.S.,*

*Inc.*, 463 U.S. 29, 48 (1983). The agency must provide findings and an analysis justifying the decision made. *Id*. (citing *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 167 (1962)). An agency's decision need only be "a reasonable, not the best or most reasonable, decision." *Nat'l Wildlife Fed'n v. Burford*, 871 F.2d 849, 855 (9th Cir. 1989).

Agency decisions must also be supported by substantial evidence. "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *De la Fuente v. Fed. Deposit Ins. Corp.*, 332 F.3d 1208, 1220 (9th Cir. 2003) (citation omitted). The IHO's decision must be upheld "[w]here evidence is susceptible of more than one rational interpretation[.]" *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

In a court's review of an agency action, "the focal point for judicial review should be the administrative record already in existence." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). Thus, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id*. at 770. As a general rule, the court cannot review an issue that the plaintiff failed to raise before the administrative tribunal. *Reid v. Engen*, 765 F.2d 1457, 1460 (9th Cir. 1985).

### C.   Relocation Benefits Under the Settlement Act

The Settlement Act, which Congress enacted in 1974, authorized the partition of the Joint Use Area between the Hopi and the Navajo Tribes, resulting in the Hopi Partition Land ("HPL") and the Navajo Partition Land ("NPL"). 25 U.S.C. § 640d *et seq*. The Settlement Act ordered members from these two tribes to relocate to the land partitioned to their respective tribal affiliation. *Id*. § 640d-13(a). The Act also authorized and created a benefit program to compensate those people who were forced to abandon their homes and relocate to a partitioned area. 25 U.S.C. § 640d-13(a), 14(b)(1)–(2). The Act conferred

jurisdiction to the United States District Court for the District of Arizona to review appeals from any eligibility determinations made by the independent agency, now known as ONHIR, created by the Act to compensate relocated people. 25 U.S.C. § 640d-14(g).

An applicant for relocation benefits bears the burden of establishing by a preponderance of evidence "that the head of household and/or his/her immediate family were legal residents" of the HPL as of December 22, 1974—the date of the Settlement Act's enactment. 25 C.F.R. § 700.147(a); *see also* § 700.97. The Settlement Act provides, "No payment shall be made pursuant to this section to or for any person who, later than one year prior to December 22, 1974, moved to an area partitioned . . . to a tribe of which he is not a member." 25 U.S.C. § 640d-14(c). Moreover, "[r]elocation benefits are restricted to those who qualify as heads-of-household as of July 7, 1986." 25 C.F.R. § 700.147(e).[1]

A 1984 change to the Agency's regulations defines the term "residence" as the "legal meaning . . . which requires an examination of a person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22, 277–78 (May 29, 1984). The final rule provides a list of factors that ONHIR may consider when assessing legal residency, including: ownership of livestock, ownership of improvements, grazing permits, home-site leases, public health records, medical and hospital records, school records, employment records, mailing address records, bank records, driver's license records, tribal and county voting records, homeownership or rental off the disputed area, information obtained by Certification Field Investigation, Social Security Administration records, marital records, records of birth, and the Joint Use Roster, also known as the Bureau of Indian Affairs Enumeration Roster. 49 Fed. Reg. 22,278 (May 29, 1984).

If a claimant left the HPL temporarily to pursue higher education or employment, the claimant can still establish his legal residency by showing substantial and recurring contacts with his home within the HPL. *See Akee v. Office of Navajo & Hopi Indian*

---

[1] Plaintiff's status as head of household is not at issue here and thus the Court will not discuss it further.

1    *Relocation*, 907 F. Supp. 315, 319 (D. Ariz. 1995). The Court refers to this as the
2    "temporarily away" exception.

3    **III.   ANALYSIS**

4           In his Motion, Plaintiff argues that the IHO's decision was arbitrary and capricious
5    and not based on substantial evidence because (1) the decision was unsupported by the
6    record, and (2) the IHO found Plaintiff's testimony credible except to the extent it
7    supported his claim for relocation benefits. (Pl. MSJ at 2.)

8           The Court agrees with Plaintiff that key factual findings in the IHO's decision are
9    either unsupported or contradicted by Plaintiff's testimony as well as that of his brothers,
10   Kee and Arnold. Regarding the period before December 1973, Plaintiff testified that
11   already in elementary school, he began living with his grandmother, Horseherder Daughter
12   #1, on Howell Mesa—undisputedly within the HPL—because he was the "Black Sheep of
13   the family." (R. at 109.) That testimony was corroborated by his brother Kee. (R. at 85.)
14   Plaintiff attended Tuba City High School for two years, from 1968 to 1970, and commuted
15   by bus from his grandmother's home. (R. at 110.) No evidence supports the IHO's
16   statement that Plaintiff "stayed in dormitories" at that time. (R. at 158.) For the two years
17   Plaintiff attended Coconino High School in Flagstaff, from 1970 to 1972, Plaintiff testified
18   that he commuted to his grandmother's every weekend and was living with his
19   grandmother in the summers. (R. at 111.) The IHO's characterization that he "visited" his
20   grandmother is again unsupported by the testimony. (R. at 158.) As corroboration, Plaintiff
21   testified that his father and grandmother enrolled him in high school, with his grandmother
22   using her thumbprint to sign. (R. at 123.)

23          Next, Plaintiff testified he lived with his grandmother after he graduated from high
24   school in 1972 until he joined the Army in December 1973. (R. at 111.) By stating that the
25   record shows Plaintiff "worked as a dishwasher in Tuba City" after high school, the IHO
26   implies that Plaintiff was not living with his grandmother at the time, when Plaintiff
27   explicitly testified he commuted from his grandmother's home for that job. (*Compare* R. at

28

158 with R. at 122.) The records showing Plaintiff earned $417 in 1972 are consistent with his testimony. (R. at 121-22.)

The entire first portion of the IHO's "Decision" (R. at 162) is unsupported by the record. The IHO states Plaintiff "grew up in Hardrock and after graduating from high school, when he visited, he primarily visited Hardrock." (R. at 162.) No evidence exists in the record to support that statement (nor does the IHO cite any); rather, the evidence shows Plaintiff's residence was at his grandmother's homesite. The IHO then states that Plaintiff's claim that he lived with his grandmother after high school in 1972 is "inconsistent with his employment in Tuba City." (R. at 162.) But, as detailed *supra*, Plaintiff testified he commuted from his grandmother's homesite for that job, there is no evidence Plaintiff had another residence, and his brother likewise testified Plaintiff was living with his grandmother at the time.

The record is clear that Plaintiff's father also resided with and cared for Plaintiff's grandmother at her homesite on Howell Mesa from 1973 on, and indeed Plaintiff's father already received relocation benefits from ONHIR on that basis. (R. at 159.) In 1973, Plaintiff earned $350, which he testified was from a 10-day project on the Hard Rock Chapter of the Navajo Nation.[2] (R. at 122.) But Plaintiff's testimony is uncontroverted that he resided at his grandmother's homesite, primarily working as a rancher helping his father take care of the livestock.

No substantial evidence to the contrary is present in the record that Plaintiff's residence up to December 1973, when he left for his service in the Army, was within the HPL at his grandmother's homesite on Howell Mesa. In other words, if properly credited, Plaintiff's testimony shows that the Settlement Act's statutory exception—"No payment shall be made pursuant to this section to or for any person who, later than one year prior to December 22, 1974, moved to an area partitioned . . . to a tribe of which he is not a member," 25 U.S.C. § 640d-14(c)—does not apply to him.

---

[2] The Hard Rock Chapter and Howell Mesa are only 20 to 25 miles apart, so the 10-day project is not evidence that Plaintiff lived elsewhere to work on the project. Even if he had, the "temporarily away" exception would apply to these 10 days. *See Akee*, 907 F. Supp. at 319.

The record is also clear that Plaintiff was in the Army from December 1973 until he was discharged for medical reasons in May 1974. (R. at 158.) He testified that he lived with his girlfriend for about a month and then returned to Howell Mesa "to take care of the sheep" with his father. (R. at 112.) He also testified that his grandmother passed away in April 1974, before he returned from the Army. (R. at 112.) The evidence shows Plaintiff left his residence on Howell Mesa "for a little while," from about October 1974 to March 1975, to work at Southwest Forest in Flagstaff. (R. at 122.) No income evidence is presented in the record for 1974, but Plaintiff's income of $284 for 1975 is consistent with his report that he worked for a short time at Southwest Forest. (R. at 122.) Plaintiff's brother Kee also testified that Plaintiff and his father were living at Howell Mesa in 1974 and 1975. (R. at 96.)

The Court agrees with Plaintiff that, in the IHO's "Decision," the statement that Plaintiff's "visitation to Howell Mesa was casual and social" (R. at 162) is unsupported by any evidence in the record, as detailed *supra*. Moreover, the IHO apparently challenges Plaintiff's residency claim with the fact that he completed a 10-day work project at the Hardrock Chapter, stating that "the distance between Howell Mesa and Hardrock was a 4 to 5 hour travel each way." (R. at 163.) But that conclusion is entirely unsupported by the record. The testimony—as well as an examination of the map of the area—shows that Howell Mesa and Hardrock are 20 miles apart "straight across" or 25 miles apart by road, and that Plaintiff had access to a vehicle. (*E.g.*, R. at 85, 119.) The IHO may have confused Plaintiff's testimony with that of his brother Arnold, who worked for a time in Happy Jack, Arizona, which he stated was four to five hours from Hard Rock. (R. at 108.) Arnold's testimony on that subject is irrelevant to Plaintiff's residency claim, because Plaintiff never worked in Happy Jack.

The IHO also states that Plaintiff "got the date of his grandmother's death wrong," but the IHO does not explain how. (R. at 163.) Plaintiff's testimony is consistent that his grandmother died in April 1974, while Plaintiff temporarily served in the Army. (R. at 112, 119.) Plaintiff returned to live at the Howell Mesa homesite a short time later, after his

1    discharge from the Army. (*E.g.*, R. at 119.) The IHO may again have confused Plaintiff's

2    testimony with that of his brother Arnold, who was not sure when his grandmother died

3    but thought (apparently incorrectly) that it was 1973. (R. at 106.)

4         In the "Credibility Findings," the IHO states, "Applicant is a credible witness about

5    his education and employment, but applicant is not a credible witness about his contacts

6    with Howell Mesa following his discharge from military service." (R. at 160.) But the IHO

7    provides no explanation for that conclusion. *See De Valle v. I.N.S.*, 901 F.2d 787, 792 (9th

8    Cir. 1990) (stating an administrative law judge "who rejects testimony for lack of

9    credibility must offer a 'specific, cogent reason' for the rejection" (citation omitted)). The

10   only reasons the IHO gave to find Plaintiff not credible were the supposed inconsistencies

11   in his testimony, but none of those inconsistencies are supported by the record, as detailed

12   *supra*. Without a specific, cogent reason, the Court cannot defer to the IHO's finding that

13   Plaintiff's testimony about his residency at Howell Mesa was not credible.

14        The Court also notes that, at the end of the Decision, the IHO credits Plaintiff's

15   testimony that he "spent very little time" in Hardrock—Plaintiff's mother's residence and

16   the only residency alternative to Howell Mesa identified. (R. at 164.) That conclusion further

17   bolsters the finding that Howell Mesa was Plaintiff's residence both before and after he

18   entered the Army from December 1973 to May 1974. In sum, if properly credited, Plaintiff's

19   testimony shows that he was a resident of the HPL as of December 22, 1974, as the

20   Settlement Act requires, and was only temporarily away to serve in the Army (before that

21   date) and for a short-term job in Flagstaff (after that date).[3] See 25 C.F.R. §§ 700.97, 147(a).

22        The Court recognizes that almost the entirety of the evidence in the record going to

23   manifestations of Plaintiff's intent to reside at Howell Mesa comes from the testimony of

24   Plaintiff and his family. But Plaintiff filed the application for relocation benefits almost 14

25   years ago and his hearing was almost eight years ago. In that time, no evidence has been

26   developed in the record to support any other conclusion than, at the relevant time, Plaintiff

27
28   [3] Plaintiff attached two exhibits to his Motion for Summary Judgment (Docs. 12-1, 12-2)
     as supplementation of the administrative record for the purpose of bolstering his residency
     claim, but the Court did not find it necessary to rely on those documents in resolving the
     issues presented and relied instead on the administrative record.

manifested an intent to reside at Howell Mesa in the HPL by way of helping his father and caring for livestock there. The Court finds the IHO's decision, as affirmed by ONHIR, was arbitrary and capricious and an abuse of discretion because the factual findings were unsupported by the record and no cogent reason was given to find Plaintiff less than credible. The Court also finds that further proceedings are unnecessary because no unresolved material questions remain in the record, nor does Defendant identify any with specificity. *See Begay v. Off. Of Navajo & Hopi Indian Relocation*, No. CV-16-08221-PCT-DGC, 2017 WL 4297348, at *4 (D. Ariz. Sep. 8, 2017) (stating remand for payment of benefits is appropriate where "the reviewing court finds the record clearly demonstrates an applicant's eligibility for relocation benefits"). After properly crediting the testimony in the record, the evidence is sufficient to demonstrate that Plaintiff is eligible for relocation benefits under the Settlement Act.

**IT IS THEREFORE ORDERED** granting Plaintiff Edward Bitsuie's Motion for Summary Judgment (Doc. 12).

**IT IS FURTHER ORDERED** denying Defendant Office of Navajo and Hopi Indian Relocation's Cross-Motion for Summary Judgment (Doc. 14).

**IT IS FURTHER ORDERED** reversing the decision of the Independent Hearing Officer as affirmed by the Office of Navajo and Hopi Indian Relocation and remanding this matter to that agency for a calculation and payment of relocation benefits under the Settlement Act.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 21st day of February, 2024.

Honorable John J. Tuchi
United States District Judge

- 11 -